AUSA: Corinne Lambert Telephone: (313) 226-9129

AO 91 (Rev. 11/11) Criminal Complaint Special Agent: Michael McHugh Telephone: (313) 618-0232

# UNITED STATES DISTRICT COURT

for the

Eastern District of Michigan

United States of America
v.
Keshaune Pace a/k/a/ Keshaune Jenkins

Case: 2:26–mj–30582
Assigned To : Unassigned
Assign. Date : 9/18/2026
Description: CMP USA v Jenkins (SH)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of July 2021 - October 2024 in the county of Macomb in the Eastern District of Michigan, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 641 | Theft of Government Funds |
| 42 U.S.C. § 1383a(a)(4) | Social Security Representative Payee Fraud |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

[signature]
*Complainant's signature*

Michael McHugh
*Printed name and title*

Sworn to before me and signed in my presence and/or by reliable electronic means.

[signature]
*Judge's signature*

Date: September 18, 2026

City and state: Detroit, Michigan

Anthony P. Patti - United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**CRIMINAL COMPLAINT AND SUMMONS**

I, **MICHAEL MCHUGH,** being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1) I am a special agent with the Social Security Administration, Office of the Inspector General, Office of Investigations (SSA/OIG/OI) and have been so employed since April 2016. I hold bachelor's degrees in English Literature and Adolescent Education from the University of Toledo, Ohio. I am a graduate of the Federal Law Enforcement Training Center, having completed a 10-week Criminal Investigator Training Program, where I graduated with academic honors, and a four-week Inspector General Investigator Training Program where I was selected as the class honor graduate. Before becoming a special agent, I spent nine years processing benefit claims for the SSA, first as a claims representative, and then as an operations supervisor. In connection with my official duties as a special agent, I have conducted investigations concerning violations of federal law, including Supplemental Security Income fraud and other Social Security benefits fraud. I am authorized to execute warrants and make arrests.

2) I have been assigned to an investigation concerning the disposition of Social Security benefits issued to Keshaune PACE, also known as Keshaune

Jenkins, (hereinafter PACE), who was serving in the capacity of representative payee for her son, I.H.

3) My investigation shows that there is probable cause to believe that PACE converted the SSA benefits intended for I.H. to her own use, in violation of Title 18 U.S.C. § 641 (Theft of Government Funds) and 42 U.S.C. § 1383a(a)(4) (Social Security Representative Payee Fraud).

4) I have prepared this affidavit in support of a criminal complaint and summons for PACE. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is presented for the limited purpose of showing there is sufficient probable cause for the requested complaint and summons and does not set forth all of my knowledge about this matter.

## INVESTIGATION SUMMARY

5) PACE began receiving monthly SSA benefits on behalf of her son, I.H, in July of 2010, based on alleged mental disabilities. As I.H.'s representative payee, PACE was informed by the SSA on multiple occasions that she was required to use his benefits for his needs, and to report events that could impact his eligibility for benefits, including to report his income. I.H. moved

out of PACE's household in or around July of 2021, a few months before his 18th birthday. PACE did not inform the SSA when I.H. left her care, and she did not inform the SSA of his work activity. Additionally, PACE completed paperwork telling the SSA that I.H. was in her care when he was not, and told them he had never worked, when he had. In January of 2023, the SSA directed PACE and I.H. to appear at a consultative medical examination to review I.H.'s ongoing eligibility for benefits. PACE brought an imposter to the medical exam, and she represented the imposter to be her son, I.H. In 2024, agents interviewed I.H., and he stated that PACE did not give him any money after he moved out of her house. He also stated that he had never been disabled, was unaware that he had been receiving SSI benefits, and had not appeared at the above-mentioned consultative exam. I interviewed PACE in September of 2024. She acknowledged her reporting responsibilities as representative payee and admitted to lying to the SSA about I.H.'s mental condition and living arrangements, including bringing an imposter to the SSA medical exam, in order to keep I.H.'s SSA benefits coming to her. PACE stated that after I.H. moved out, she used his SSA benefits to pay for her own household expenses. Based on the investigation,

the SSA determined that PACE was overpaid and/or misused $29,982.01 of I.H.'s benefits.

## PROBABLE CAUSE

### Social Security Program Background

6) The SSA administers programs under Title XVI of the Social Security Act, including the Supplemental Security Income (SSI) program. SSI is a needs-based program that pays monthly cash benefits to individuals who are either disabled or over age 65, and who have little or no income and resources.

7) If it is determined that an SSA beneficiary is incapable of handling their own finances, the SSA will select a "representative payee" to assist with the management of SSA funds. SSA deems minor children to be incapable of handling their own finances. As part of the representative payee application process, the applicant agrees to use the benefits for the care and needs of the beneficiary, is notified of the need to tell the SSA if a child beneficiary leaves her care, and is responsible for accounting for how the benefits were allocated. The payee applicant is also instructed to report changes that would affect the beneficiary's eligibility, such as changes in income. If the SSA learns that the representative payee is not using the SSA benefits for the beneficiary's needs, SSA will stop sending benefits to the representative

payee. If the representative payee did not use the benefits for the beneficiary as required, the SSA considers the benefits to have been misused.

**Keshaune PACE Investigation**

8) SSA records show that in May of 2008, PACE filed for monthly SSA benefits on behalf of her four-year-old son, I.H, alleging that he had mental disabilities. In July of 2010, I.H. became entitled to SSI benefits based on attention deficit hyperactivity disorder (ADHD) and oppositional defiant disorder (ODD). At the time of the application, PACE also applied to be I.H.'s payee, and given that she was his custodial parent, she was selected. SSA's payee application paperwork informed PACE of her responsibilities to use I.H.'s benefits for his care and needs, and to notify the SSA when I.H. left her custody or otherwise changed his living arrangements or income. It also advised her that false statements or misrepresentation of a material fact is a crime punishable under federal law. Shortly thereafter, PACE began receiving monthly SSI payments on I.H.'s behalf. PACE and I.H. lived together in the Detroit metro area throughout his childhood.

9) I obtained records from a high school in the Detroit metro area pertaining to I.H. The records showed that in October of 2021, school staff completed a document titled "Education Project for Homeless Children and Youth

Student Referral." The listed reason for referral on the application states, "Moved out of mothers house and is currntly [sic] living with [XXXXX] in Troy. He will be moving to an apartment in Troy with a roommate on 10/XX/2021 (his 18th birthday)."

10) The high school records further showed that in December of 2021, a document titled "Unaccompanied Homeless Youth Verification for the Purposes of Federal Financial Aid" was completed by the school, and the document certified that "after July 1, 2021, [I.H.] was living in a homeless situation, as defined by Section 725 of the McKinney-Vento Act, and was not in the physical custody of a parent or guardian."

11) On October 24, 2022, PACE completed form SSA-3380 - Function Report as part of an age-18 medical continuing disability review (CDR) for I.H. PACE wrote on the form that I.H. was living in the house with her, that she fed and showered him, and that he had never worked.

12) On January 19, 2023, as part of I.H.'s pending CDR, a person purporting to be I.H. accompanied PACE to an SSA psychiatric Consultative Exam (CE). The person purporting to be I.H. was noted on the exam paperwork to be six feet tall, while I know that I.H. is actually five feet seven inches tall. PACE reported that I.H. was on medication until he was 14 years old for "behavior

issues." The person purporting to be I.H. and PACE reported that he's been hearing voices since he was around 11 or 12 years old. It was reported that I.H. was currently in the 12th grade at a high school in the Detroit metro area and on track to receive a diploma. [*Agent note: I.H.'s high school and college transcripts show that I.H. had already graduated high school on June 12, 2022.*] When the examiner asked why there had not been any treatment since I.H. was 14 years old, PACE stated, "It's hard to get him out. Transportation is hard." When asked if he felt like he needed to be on disability, the person purporting to be I.H. stated, "I need help for the voices in my head," although he said he didn't want to be in counseling or therapy. The CE examiner noted that on the day of the exam, the person purporting to be I.H. "presented as a very poor historian and seemed to be greatly exaggerating." During the exam, the person purporting to be I.H. sat holding his hands over his ears, was completely uncooperative during the IQ testing, and had difficulty achieving success at even the simplest of tasks on the IQ testing. The person purporting to be I.H. received a full-scale IQ score of 48; however, the CE examiner did not consider the IQ testing results to be valid because they were completely inconsistent with his reports that he was in a

regular education academic setting and never had any special education services.

13) Agents interviewed I.H. as part of the investigation in 2024. He stated that he left PACE's house in approximately 2020 or 2021, and on May 4, 2022, he took a flight to Florida and never returned to Michigan. College records and employment records corroborated I.H.'s statements about his Florida living arrangements. I.H further stated that after he moved out of PACE's house, she did not provide him with any money. He also stated that he had never been disabled, was unaware that he had been receiving benefits, and had not appeared at a January 2023 SSA consultative exam in Michigan because he had not been in Michigan at any time since May of 2022. I.H. explained that he worked at Texas Roadhouse in the Detroit metro area in 2021 and 2022, and that he had worked at multiple places in Florida. I queried government databases with I.H.'s earnings records, and the records supported I.H.'s statements about his employment.

14) On September 25, 2024, I interviewed PACE at her home in Eastpointe, Michigan. PACE acknowledged she was the representative payee for her son I.H. PACE admitted that she knew the duties of a representative payee, that she was required to use I.H.'s SSI money for his benefit, and that she was to

report changes that might affect his SSI payments to the SSA, to include if he received any other income.

15) PACE initially declared that I.H. was currently living with her and that the last time he was physically present at her home was three weeks ago. I told her that was untrue, and that he had not lived with her for years. PACE teared up and said she was frustrated and worried about this situation. When I asked if it was true that I.H. hadn't lived with her since 2020, she said she believed he had not lived with her since 2020 or 2021. She said he moved out very shortly after graduating high school. To her knowledge, he had last worked at Texas Roadhouse in the Detroit metro area years ago and had not had a job since then.

16) PACE said that after I.H. moved out, she used his SSI money to pay for her own household expenses. She said that she sent him money sometimes, but only via Cash App and PayPal, and that she last sent him money sometime in 2023. PACE provided her Cash App and PayPal handles and the email associated with both accounts. [*Agent note: I later obtained financial records from both companies, which showed that after July of 2021, PACE had sent I.H. a total of only $111.00, and the records appear to show that*

*out of that sum, $100.00 was rejected or retracted, leaving only $11.00 that was successfully delivered to I.H.*]

17) I showed PACE the SSA function report she submitted in October of 2022. She confirmed it was her handwriting and that she had written that I.H. was living in the house with her and she fed and showered him. PACE acknowledged that what she had written was not true because I.H. was not living with her at that time.

18) I read aloud to PACE part of a form that she submitted to the SSA on April 11, 2023 regarding I.H.'s benefits, on which she had written, "Every penny was spent on his needs, and we were in a hardship…" PACE acknowledged filling it out, and signing I.H.'s name, stating that she always signed his name. She acknowledged that it was untrue that every penny was spent on his needs because he was not living with her.

19) I showed PACE a picture of the medical office building where the consultative exam for I.H. took place in January of 2023. She remembered the building and said she'd been there several times. I asked her if she remembered bringing a person who was not her son there for her son's appointment and she said she did not. I later read some of the notes from the appointment aloud to jog her memory and repeatedly asked her about it. She

eventually acknowledged that it had been her at the appointment, and that the six-foot-tall person she brought with her to the appointment was not her son, although she would not tell me who he was. She acknowledged that she would have done this to keep the benefits from being stopped.

20) I provided the SSA with my investigative findings regarding PACE. The SSA determined that from July 2021 to October 2024, PACE received $29,982.01 of I.H.'s SSI benefits but should not have, explaining that: (1) $24,030.29 of the total was not payable because of I.H.'s income and should have been paid to no one at all, resulting in a loss to the government; and (2) I.H. was entitled to the remaining $5,951.72 of the total, but PACE misused it because she did not use it for I.H.'s care or needs.

## CONCLUSION

21) Accordingly, based upon my training, experience, and the facts set forth in this Affidavit, there is probable cause to believe that PACE, while serving in an official capacity as representative payee, unlawfully converted SSA benefits intended for I.H., to her own personal use and did thereby knowingly and intentionally violate Title 18 U.S.C. § 641 and Title 42 U.S.C. § 1383a(a)(4).

I, Michael McHugh, Special Agent with the Social Security Administration, Office of the Inspector General, Office of Investigations, being duly sworn according to law, hereby affirm that the facts stated in the foregoing affidavit are true and accurate to the best of my knowledge, information, and belief.

MICHAEL MCHUGH
Special Agent, SSA/OIG/OI

Sworn to before me and signed in my presence and/or by reliable electronic means.

ANTHONY P. PATTI
United States Magistrate Judge
September 18, 2026